**In re Anonymous No. 43 D.B. 86**

Disciplinary Board Docket no. 43 D.B. 86.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KELLER, *Member,* December 6, 1988 — Pursuant to rule 208(d), Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## HISTORY OF PROCEEDINGS

A petition for discipline was filed against respondent on July 29, 1986. The petition alleged that respondent had violated seven disciplinary rules resulting from his delivering to police officers money that was given to him by his client/paramour in her attempt to satisfy the extortionate desires of two [    ] police officers. The rules allegedly violated are:

(A) D.R. 1-102(A)(3), prohibiting an attorney from engaging in illegal conduct involving moral turpitude;

(B) D.R. 1-102(A)(4), prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

(C) D.R. 1-102(A)(5), prohibiting an attorney from engaging in conduct that is prejudical to the administration of justice;

(D) D.R. 1-102(A)(6), prohibiting an attorney from engaging in other conduct that adversely reflects on fitness to practice law;

(E) D.R. 7-102(A)(3), prohibiting an attorney from concealing or knowingly failing to disclose that which he is required by law to reveal;

(F) D.R. 7-102(A)(7), prohibiting an attorney from knowingly assisting a client in conduct that the attorney knows to be illegal or fraudulent;

(G) D.R. 7-102(A)(8), prohibiting an attorney from knowingly engaging in other illegal conduct or conduct contrary to a disciplinary rule.

An answer to the petition for discipline was filed on September 24, 1986. The matter was referred to Hearing Committee [     ] consisting of [     ].

A prehearing conference was held on December 21, 1987 at which time petitioner indicated that petitioner's case would be presented by notes of testimony in the trial of *United States v. [A] et al.* and by a stipulation of fact entered into by the parties to this proceeding. Hearings were held on February 18, 1988 and February 25, 1988 at which respondent presented character evidence and testified personally.

The report of Hearing Committee [     ] was filed on June 28, 1988. The hearing committee found that respondent had violated D.R. 1-102(A)(3), prohibiting illegal conduct involving moral turpitude, and D.R. 1-102(A)(5), prohibiting conduct prejudicial to the administration of justice. The recommended discipline was a three-year suspension. The hearing committee expressed numerous reasons for recommending suspension rather than the disbarment sought by petitioner. The committee noted that respondent was remorseful, he has admitted his guilt, he received no financial gain, and he testified for the United States without immunity.

The hearing committee also found significance in the character testimony presented on behalf of respondent, the fact that respondent is no longer practicing law, and the lack of evidence of an attorney/client relationship at the time of the incidents involved in this matter.

Petitioner submitted a letter brief on exceptions to the hearing committee report along with the brief to the hearing committee. In the letter brief, filed July 11, 1988, petitioner excepted to the findings regarding disciplinary rule violations and mitigating circumstances, as well as the recommended discipline. Petitioner argued that respondent violated D.R. 1-102(A)(4) by initially making false statements to the U.S. attorneys and the FBI, as well as D.R. 1-102(A)(6) by admitting criminal acts that reflect adversely on his fitness to practice law. Petitioner went on to argue that there were no mitigating circumstances in respondent's favor because engaging in illegal conduct for money is no different than engaging in illegal conduct for love and furthermore, respondent had placed himself in the position he found himself in. Finally, petitioner argued that because there were no mitigating circumstances disbarment was warranted in this matter.

Respondent replied to the exceptions raised by petitioner in a letter brief and the attached brief to the hearing committee. The letter brief was filed on August 9, 1988. Respondent argued that there was no deceit involved in his statements to the government investigators because he corrected himself in the same interview. Respondent went on to argue that he should be treated as a victim of a crime because he was considered a victim by the government and the community. On the issue of mitigation, respondent argued that the duress and inducement of others involved should be considered

as mitigating evidence. Finally, respondent argued that disbarment was inappropriate in light of respondent's rehabilitation, remorse and cooperation.

Oral argument was requested by respondent. A three-member panel of the disciplinary board heard oral argument on September 7, 1988. The matter was adjudicated by the board at the September 9, 1988 meeting of the board.

## FINDINGS OF FACT

(1) Respondent was born on October 14, 1941, and was admitted to practice law in the Commonwealth of Pennsylvania in or about October 1966.

(2) At all relevant times, respondent and [B], the owner of [C], a massage parlor, were close personal friends and shared a serious romantic involvement.

(3) Respondent had briefly represented [C] in its incorporation and in obtaining financing for start-up.

(4) As a result of [B's] concern for potential police activity regarding her business and her constant pressuring of respondent to investigate the situation, respondent had a friend and client, [D], arrange a meeting for him with Inspector [A] of the [    ] Police Department sometime in February 1982.

(5) By the time [B] began to become concerned with police activity regarding her business, respondent no longer represented the corporation or [B] personally.

(6) Respondent knew or at least suspected that [C] was an establishment "where there was potential or actual prostitution."

(7) Prostitution is an illegal act over which the [    ] Police Department has jurisdiction. 18 Pa. C.S. §5902.

(8) At respondent's meeting with [A], who was at that time still an inspector in the [ ] Police Department, respondent inquired as to whether [B] should be concerned with regard to police activity in the area.

(9) [A] informed respondent that massage parlors were not a police priority, but he suggested that respondent talk to [B] about paying $500 a month and having that spread around to the appropriate places and that would insure that they would have no problems.

(10) Respondent did not propose or initiate the corrupt act. Inspector [A] suggested the payoffs. In fact, the massage parlor was raided by the Morals Squad of the [ ] Police Department shortly after the meeting.

(11) Respondent told [A] that he would discuss with [B], [A's] suggestion that monies be paid.

(12) Respondent begged [B] not to get involved in the situation.

(13) Respondent knew that it was [B's] intent "to prevent raids" on [C].

(14) After the raid, [B's] efforts to have respondent continue the relationship with [A] became "exceedingly intense."

(15) Respondent met with [A] on or about March 4, 1982, and at that meeting he placed on the table an envelope known to him to contain five $100 bills, which had been given to him by [B].

(16) During the conversation of March 4, 1982, [A] doubled his extortionist demands.

(17) At the March 4 meeting, [A] introduced respondent to Lieutenant [E], at that time also of the [ ] Police Department, and told him that [E] was his assistant and that in [A's] absence respondent should deal with [E].

(18) On or about April 9, 1982, respondent met with [E] and placed another envelope, known to respondent to contain ten $100 bills given to him by [B], on the table.

(19) On or about June 8, 1982, respondent met with [A] in respondent's office and put on the corner of his desk an envelope, known to respondent to contain ten $100 bills given to him by [B], which [A] took with him when he left respondent's office.

(20) After June 8, 1982, respondent had no further meetings with Inspector [A] because of respondent's discomfort with the situation and his sincere desire to remove himself from the position in which he found himself.

(21) In or about late 1982 and early 1983, the Office of the U.S. Attorney 'for the [ ] District of Pennsylvania and the Federal Bureau of Investigation were investigating allegations of corruption in the [ ] Police Department.

(22) On or about December 14, 1982, as part of the investigation of the [ ] Police Department and prior to the indictment in *United States of America v. [A] et al.*, respondent was interviewed at the Office of the U.S. Attorney. A true and correct copy of FBI Special Agents [F's] and [G's] transcription of their notes of that interview is attached as Exhibit "A" to the stipulation of facts.

(23) During the course of his interview by the FBI and U.S. Attorney, respondent, because of fear for his personal safety from the high-ranking police officers with whom he had dealt, initially denied any involvement with [A] and any knowledge of any involvement of anyone associated with [C], or with [A].

(24) When respondent, during the course of the interview, was advised that evidence obtained during the investigation of the [ ] Police Department

gave the interviewers reason to believe that respondent was not completely truthful, he immediately informed those present that his statement had been truthful except for his description of his involvement with [A].

(25) Respondent cooperated with the government's investigation of corruption in the [  ] Police department and testified as a government witness without grant of immunity at the trial of [A] and [E].

(26) Respondent's conduct was induced by the extortionate practices of high-ranking [  ] police officers and his romantic relationship with a woman.

(27) Respondent did not alert the U.S. Attorney's office to this situation before he was interviewed because he was afraid of [A] and [E] and believed they might have harmed him for such action.

(28) Having admitted to delivering the sum of $2,500 to officers of the [  ] Police Department on behalf of his friend, [B], respondent admits to violating the following disciplinary rule of the Code of Professional Responsibility:

D.R. 1-102(A)(5), which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice.

(29) Respondent's reputation in the community and the opinion of those with whom he associates professionally and socially has remained and is one of great respect for both his professional abilities and personal integrity.

(30) Respondent's clients, who have been informed of the incidents described above, continue to recognize his legal acumen and rely on his professional judgment.

(31) Respondent recognizes that his conduct has been improper, stupid, unethical, illegal, indiscreet and unprofessional and is remorseful.

(32) While respondent was practicing law he advised all of his clients and potential clients of these matters. He also advised his current employer, [O], of these matters.

(33) Respondent has not been the subject of any prior or subsequent disciplinary complaints.

## DISCUSSION

The issue presented in this matter is the just degree of discipline to be imposed upon respondent. Respondent has candidly admitted the rules violated and therefore the issue of culpability is not in dispute. Furthermore, respondent does not except to the three-year suspension recommendation of the hearing committee. Petitioner, on the other hand, argues for the ultimate discipline of disbarment.

At the outset, it should be noted that the board in its quasi-appellate capacity, has accepted the hearing committee's findings of fact in their totality. The hearing committee, as the trial court, was uniquely situated to evaluate the credibility of all the witnesses especially that of respondent.

A thorough review of the transcript of the testimony of all the witnesses does not enable one to supersede the judgment made by the hearing committee as to the candor, sincerity and truthfulness of the testimony.

Respondent as a result of an aberrant fatal attraction to a woman was induced to violate serious disciplinary rules of the Code of Professional Conduct, the gravity of which the board is fully cognizant.

The board finds distinguishable those cases cited by petitioner as applied to conduct of respondent. In *Office of Disciplinary Counsel v. Stern*, 515 Pa. 68, 526 A.2d 1180 (1987), there were repeated efforts to corruption; respondent's motive was greed; re-

spondent was the perpetrator. In the instant case respondent's acts were singular; respondent became a victim of extortion; respondent's actions were not for profit.

*In re Anonymous 58 D.B. 82,* 27 D.&C.3d 471 (1983), cited by petitioner, one would assume for the purpose that an aberrant love or passion for a member of the opposite sex is no defense is misplaced. In that case respondent husband by taking the bar exam for his wife committed a public fraud with the potential for undermining the basic fabric of admission to practice law.

The board is of the opinion that respondent's involvement is more analogous to the attorneys *In re Anonymous No. 41 D.B. 79 and 42 D.B. 79,* 21 D.&C.3d 294 (1981). Respondents involved in that matter participated in two schemes in which clients were to pay off a local political party official in order to obtain special treatment from local governmental entities. The first scheme, had it not been called off, would have resulted in a utility company paying a local political party $800,000. This was to be disguised as a legal fee for the services of respondents and respondents were to receive the interest earned on the money before it was passed on to the political party. In the second scheme, respondents delivered $4,000 to the local political party official on behalf of a client to obtain placement of the client's mother in the county nursing home. For their role in these schemes the attorneys received three-month suspensions.

Respondent was considered a victim of extortion in the eyes of the federal government and those who knew of him prior to his run-in with the police extortion scheme. Like the attorneys in *41 D.B. 79 and 42 D.B. 79,* respondent did not initiate the illegal

scheme but was induced to participate in it by corrupt public officials.

Respondent has made much of the fact that he had referred the legal work for the massage parlor to another attorney prior to delivering the money to the police on behalf of his close personal friend. This may preclude a finding that respondent has engaged in misconduct during the course of representation of a client but does not insulate him from discipline under the rules relating to general conduct. An attorney is held to a high standard of conduct both professionally and otherwise. Respondent acknowledged this by stating, "It is certainly true and I do understand that one is a lawyer 24 hours a day . . ." Because an attorney may be disciplined for conduct whether or not it occurred during the course of an attorney-client relationship, respondent is not to be treated more favorably than the attorneys in *41 D.B. 79 and 42 D.B. 79,* whose misconduct arose during attorney-client relationships.

Respondent presented character witnesses from numerous members of the bar, the community and government, all of whom have earned outstanding reputations who proffered that the respondent, notwithstanding his peccadillo, still enjoys an excellent reputation for honesty and integrity, and who further testified that respondent it not an "unfit attorney" from whom the public needs protection.

The board was further persuaded in arriving at appropriate discipline by the following language contained in the hearing committee's report:

"The panel believes that the primary purpose of our system of lawyer discipline is to protect the public from unfit attorneys and to maintain the integrity of the legal system. Respondent is not an 'unfit attorney' from whom the public needs protection, and he ultimately did do what was morally right and

ethically proper when necessary . . . If anything, respondent is guilty of a brief lapse of judgment. He embarrassed himself and has had to live with the financial, social, and professional consequences of his actions. We recognize that he is no longer practicing law and that he has attempted to make amends. Unfortunately, his actions have also embarrassed his fellow lawyers at a time and in a climate where lawyers and judges must continuously strive to conduct themselves in a totally honest, moral and ethical manner."

It should be noted that since giving up the practice of law in December 1987, respondent's present position with a large company in [    ] is contingent upon him not being disbarred and continuing as a productive member of the community.

It is obvious from a reading of the entire record that in an otherwise outstanding legal career respondent allowed himself to lapse at the instigation of his "lover" into serious ethical violations. The board is satisfied that respondent has extricated himself from and is contritely remorseful for his lapse. The board, therefore, feels that the disbarment requested by the petitioner is unwarranted in this matter. The board, however, feels that the discipline assessed by the hearing committee should be increased to four years retroactive to December 21, 1987.

## RECOMMENDATION

Based upon the foregoing findings and discussion, the disciplinary board recommends that respondent, [    ], be suspended from the practice of law for a period of four years retroactive to December 21, 1987. The board further recommends that, pursuant to rule 208(g), Pa.R.D.E., respondent be directed to pay the necessary expenses incurred by

the board in the investigation and prosecution of these proceedings.

Messrs. Douglas and Tumolo did not participate in the adjudication.

### ORDER

And now, April 13, 1989, the rule to show cause entered by this court on January 12, 1989, is discharged, the recommendation of the disciplinary board dated December 6, 1988, is accepted, and it is hereby ordered that [respondent] be and he is suspended from the bar of the commonwealth for a period of four years retroactive to December 21, 1987, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.

Mr. Justice Larsen and Mr. Justice McDermott did not participate in the consideration or decision of this case.

Mr. Justice Flaherty dissents and would enter an order of disbarment.